FILED

98 MAY -5 PH 2: 56

U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

**FIREMEN'S INSURANCE
COMPANY OF NEWARK, NEW
JERSEY,**                                  ]
                                            ]
                                            ]
                                            ]
    Plaintiff(s),                           ]    CV 96-N-2215-NE
                                            ]
    vs.                                     ]
                                            ]
**WALTER J. PRICE, JR., et al.,**           ]

    Defendant(s).

ENTERED

MAY   5 1998

## Memorandum of Opinion

In this state law action, plaintiff Firemen's Insurance Company of Newark, New
Jersey ("FIC"), seeks to recover losses on security bonds issued on defendant Walter J.
Price ("Price") and seeks exoneration from future losses on those bonds.[1]  Specifically, FIC
alleges that it has incurred losses and is subject to future losses on its bonds because of
irregularities in the administration of several estates by Price, the General Administrator of
Madison County. Jurisdiction over the subject matter of this action is based upon diversity
of citizenship, pursuant to 28 U.S.C. § 1332.

---

[1] Also named as a defendant in this action is Margaret Price, named in order to recover "fraudulent"
transfers to her by her co-defendant and husband, Walter J. Price, transferred through a division of marital assets
by a divorce decree that "has been undertaken by defendants. *Complaint* at ¶¶ 6, 19.

49

This action is presently before the court on FIC's motion for summary judgment as to defendant Price, filed September 9, 1997.[2] The motion is ripe for decision, and, upon due consideration, the motion is due to be granted.

## I.   Statement of the Case.

### A.   Procedural History.

This action commenced with filing of the complaint on August 23, 1996. On August 26, 1996, the court received an executed return on service of Price, and on October 7, 1996, Price filed an answer.[3] Then, on December 16, 1996, over the objection of FIC, the court granted a ninety-day stay of all proceedings because of an ongoing criminal investigation of Price involving the same events that form the basis for this action.[4]   Next, on July 18, 1997, the court stayed, for a period of sixty days, any discovery that required Price to personally answer questions, either by deposition or interrogatories, or that required Price to produce documents. On September 18, 1997, FIC filed its motion for summary judgment, which is the subject of this opinion.

---

[2] Also pending in this action is a motion for summary judgment by defendant Margaret Price as to the claims against her, filed November 11, 1996. However, on November 7, 1997, the court granted FIC's motion to stay disposition of the motion for summary judgment by Margaret Price because FIC has been unable to engage in full discovery, including deposing defendant Walter J. Price. *See infra* note 4.

[3] The court denied FIC's motion for a temporary restraining order and, after a hearing, denied FIC's motion for a preliminary injunction, despite FIC's concern that Price may seek to "divert, conceal, and secret assets which would otherwise be available to satisfy the legitimate claims of Walter J. Price, Jr., including FIC." *Complaint* at ¶ 3.

[4] Subsequently, FIC moved the court to reconsider its stay, stating prejudice to FIC by the delay as grounds for its motion. On December 23, 1996, the court denied FIC's motion to reconsider the stay.

2

On September 26, 1997, the court set out a schedule for briefing and submission evidence on the motion, which required Price to respond on November 5, 1997.[5] In his response, filed November 5, 1997, Price claimed that a criminal investigation conducted by the Madison County District Attorney's Office resulted in an indictment returned against him by the Madison County Grand Jury based on his administration of four estates.[6] *Price's Evidence Submitted in Response to Exhibit D of Court's Order ("Nonmovant's Evidence")* at Exhibit A (Grand Jury indictment). According to Price, the criminal investigation was ongoing with regard to fourteen other estates. *See id.* at Exhibit B, pp. 17-18 (transcript of hearing in the Circuit Court of Madison County, Alabama, dated August 4, 1997, where the Deputy District Attorney stated that fourteen other "counts" could be forthcoming.) Therefore, in his response to FIC's motion for summary judgment, Price stated as follows:

> Because of the pending criminal matters, Price has been unable to engage in discovery without running a serious risk of waiving his fifth amendment rights against self-incrimination. This has resulted in this case being stayed by this court on two previous occasions, as well as this court granting a motion for protective order preventing Price from being deposed.

*Response of Price to FIC's Motion for Summary Judgment* at 2.

---

[5] On November 25, 1996, defendant Margaret Price filed a motion for summary judgment as to all claims against her. Margaret Price contemporaneously submitted a brief and evidence in support of her motion. Shortly thereafter, the court stayed proceedings in the case because of the pending criminal investigation of Walter J. Price, forestalling FIC's response to the motion.

When FIC filed its motion for summary judgment, the court set out a schedule for briefing and submission of evidence on Margaret Price's motion, as well as FIC's motion, which required FIC to respond to Margaret Price's motion by November 5, 1997. However, on FIC's motion for a stay, the court stayed disposition of Margaret Price's motion for summary judgment because FIC represented to the court that, while it had deposed Margaret Price, in order to respond, it still needed financial information from Walter J. Price, which it had been unable to obtain under the court's order staying any discovery that requires Walter J. Price to personally answer.

[6] The four estates named in the indictment are "Kazek, Fu, Little and Parks." *See Price's Evidence Submitted in Response to Exhibit D of Court's Order* at Exhibit A.

Accordingly, the court specially set a hearing. At that hearing, on December 23, 1997, the court inquired as to which specific factual issues raised by FIC in its motion for summary judgment Price is unable to formulate a response "without running a serious risk of waiving his fifth amendment rights against self-incrimination." *See id.* At the hearing, in response to the court's inquiry, counsel for Price represented to the court that the "fifth amendment" issue should soon be moot, as Price is actively pursuing plea negotiations and anticipates a prompt resolution in his criminal proceedings.

When another two and one-half months passed and Price had not resolved his criminal proceedings,[7] on March 5, 1998, the court ordered Price to file a second response to FIC's motion for summary judgment. The court directed Price, in this second response, to admit or dispute all of the factual issues raised by FIC or "to set out with specificity, as to each paragraph of movant's statement of facts, the precise reason why 'Fifth Amendment concerns' prevent his compliance . . . ." Price's second response to FIC's motion for summary judgment, filed April 15, 1998, as well as his previous response, filed November 5, 1997, were considered by the court in determining the undisputed facts in this case for the purpose of ruling on the motion for summary judgment.

---

[7] By order entered November 4, 1997, the court required Price to file a written report of the progress of his criminal proceedings each month, beginning on December 1, 1997. On March 2, 1998, Price filed a fourth report on the status of the criminal proceedings against him, stating that the proceedings "remain open."

4

## B.    Statement of Facts.[8]

Price, an attorney, formerly served as the General Administrator of Madison County,
Alabama. At the request of Price, FIC issued a series of guardian and administrator bonds
on behalf of Price covering approximately seventeen probate Estates that were before the
Probate Court of Madison County, Alabama.[9] *See Movant's Evidence Submitted in
Response to Exhibit D of the Court's Order ("Movant's Evidence")* at Exhibit 1. According
to FIC claims analyst Ann Hester ("Hester"), FIC received notices from claimants under
these bonds alleging that Mr. Price had misappropriated funds entrusted to him and had
converted Estate assets to his personal use. *Hester Affidavit* at ¶ 3. Hester states that Price
has acknowledged certain errors and omissions in the exercise of his fiduciary obligations
and that Price voluntarily surrendered his license to practice law, making him unable to
fulfill his obligations as administrator or guardian. *Id.* at 5. Consequently, both the Probate
and Circuit Courts of Madison County required FIC to discharge Price's duties by settling
the Estates and reimbursing the Estates for their costs and losses that resulted from
irregularities in the administration of the Estates by Price. *Id.* at 6; *see Movant's Evidence*
at Exhibit 3.

FIC claims to have incurred losses in the majority of the Estates. *Hester Affidavit* at
¶ 4. At the time it filed its motion for summary judgment, FIC had made payments to the

---

[8] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their
respective responses to those submissions, and the court's own examination of the evidentiary record. These are
the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S.
Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[9] Several Estates were removed to the Circuit Court of Madison County, Alabama.

5

Courts of Madison County, pursuant to court orders, in order to reimburse eleven Estates

for losses attributable to Mr. Price as follows:

| Estate | | Amount of Payment |
|---|---|---|
| Estate of James G. Kazek | | $12,534.31 |
| Estate of Mildred L. Ragan | | $68,185.38 |
| Estate of George Little | | $69,593.19 |
| Estate of Eunice D. Taylor | | $47,163.07 |
| Estate of Robert C. Galyon | | $22,062.52 |
| Estate of Li Li Fu | | $33,897.98 |
| Estate of Charles C. Lee | | $0.00 |
| Estate of Owen W. Elmore | | $15,000.00 |
| Estate of Charles W. Warren | | $8,250.35 |
| Estate of Mary K. Brookshire | | $4,149.43[10] |
| Estate of Thomas Allen Payne | | $0.00 |
| | TOTAL | $280,836.23 |

*Hester Affidavit* at 3; *Movant's Evidence* at Exhibit 3 (copies of court decrees approving

final settlement and copies of checks issued by FIC to the court).

---

[10]At the time of its motion for summary judgment, FIC stated that it had not yet made payments to the benefit of the Estate of Mary K. Brookshire, as directed by the courts. *Movant's Initial Submission in Response to Exhibit D of the Court's Order* at 2, n.2. In the Brookshire Estate, the Probate Court of Madison County entered a Decree on Final Settlement directing FIC to pay $4,149.43 into the court for losses resulting from irregularities in the handling of Estate assets by Price. *Id.* However, FIC filed, with the Probate Court, a motion to alter, amend or vacate the decree on the ground that the principal loss to the Estate is less than that determined by the Court. *Id.*

6

In addition, FIC claims to have incurred attorneys fees and expenses to date which total $71,526.74 pursuant to discharging its obligations under the bonds issued on behalf of Price, and FIC claims it continues to incur related costs and expenses. *Hester Affidavit* at ¶9. According to Hester, FIC's total losses at the time of its motion for summary judgment totaled $352,362.97.[11] *Id.*

In addition to the bonds in the Estates listed above, FIC has issued the following six bonds and faces additional future liability to the extent of the sum of the bonds as listed below:

| **Bond** | **Estate** | **Sum of Bond** |
|---|---|---|
| BNA 100 08 45 | Parks | $57,500.00 |
| BNA 100 28 18 | Tucker | $11,000.00 |
| BNA 100 19 27 | Griffith/Vermeulen | $10,000.00 |
| BNA 100 28 50 | Koehne | $1,000.00 |
| BNA 100 10 46 | Shore | $50,000.00 |
| BNA 100 08 43 | Veach | $1,000.00 |
| | TOTAL: | $130,500.00 |

*Hester Affidavit* at ¶ 8; *Movant's Evidence* at Exhibit 4 (copies of bonds issued by FIC on behalf of Price and copies of the powers of attorney FIC granted to its signatory on the bonds)

---

[11] Adding $280,836.23, FIC's cost of settling the eleven Estates, to $71,526.74, the attorney's fees and expenses calmed by FIC, yields a total of $352,362.97.

7

## II.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c)

8

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury

9

could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Discussion.

### A. FIC's Right to Reimbursement for its Losses.

The relationship between Price and FIC is that of principal and surety, respectively. *See Green v. McCord*, 85 So. 750 (1920). Under Alabama law, both Price and FIC are liable on claims by the Estates to which they are obligated. *Alabama Bank and Trust Co. v. Garner*, 25 Ala. 269, 142 So. 568 (1932) ("As between the principal and surety the liability of the principal is primary and that of the surety is secondary, still they are jointly and severally liable to the creditor, and their liability to him is primary."); *see also Saint v. Wheeler & Wilson Mfg. Co.*, 95 Ala. 372, 10 So. 539 (1892); *Craft v. Standard Accident Ins. Co.*, 220 Ala. 6, 123 So. 271 (1929).

The State of Alabama has codified the common law, which long recognized a surety's right to reimbursement by a principal upon the payment of claims under a bond. Ala. Code § 8-3-5 (1975); *see Jones v. Moore*, 102 So. 200 (1924). That section states:

Payment by a surety . . . of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and

10

all legal costs to which he may have been subjected by the default of the principal.

Ala. Code § 8-3-5 (1975). Accordingly, upon payment by the surety of any sum to the obligee or claimants under a bond, the surety is entitled to immediate indemnity from the principal. *Id.* Therefore, FIC is entitled to recover all of its losses incurred as payments to the court on its bonds and incurred as expenses in the discharge of its obligations under the bonds.

It is undisputed that FIC has been ordered by the Circuit Court and Probate Court of Madison County, Alabama, to pay into those courts a total $280,836.23 as to reimbursement to eleven Estates for losses resulting from irregularities in the handling of assets of those Estates by Price. Furthermore, FIC claims $71,526.74 in expenses related to settling those eleven Estates. FIC's claims adjuster Ann Hester testified under oath to this court that this is the amount of expense incurred by FIC; Price offers no evidence to rebut this amount; and the court finds this amount to be reasonable. Accordingly, FIC is entitled to judgment as a matter of law against Price in the amount of $352,362.97, plus interest.

## B. FIC's Right to Exoneration and Quia Timet.

Not only is a surety entitled to reimbursement for funds already paid on claims, but the surety may also require the principal to exonerate it against future losses. In *Doster v. Continental Casualty Co.*, the Alabama Supreme Court noted the longstanding principle of suretyship known as *quia timet*, which gives the surety an array of remedies before claims

11

are actually paid under the bonds. 268 Ala. 123, 105 So. 2d 83 (1958). The Court in *Doster* held that:

No principle of equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying, or being called upon to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability for this payment . . . .

*Doster*, 268 Ala. at 125; *see also Garner*, 142 So. at 570; *Tillis v. Folmar*, 145 Ala. 176, 39 So. 913 (1905); *Segall v. Loeb*, 218 Ala. 433, 118 So. 633 (1928). The court in *Doster*, after reviewing the general principles of suretyship, held that the surety was entitled to seek equitable relief by marshaling the assets of the principal, sequestering and protecting the principal's assets for purposes other than retiring the principal's obligations. *Id.*

In this case, it is undisputed that FIC has exposure to potential future liability on bonds it issued on behalf of Price in the total amount of $130,500.00. The equitable principals of exoneration and *quia timet*, under Alabama law, provide a remedy for FIC's potential future losses. The requirements for a bill of exoneration, as set forth in *Doster*, are met in this case: (1) the relationship of principal and surety is established; (2) Price is in default of his obligations; (3) FIC has incurred losses and remains potentially liable for additional losses by virtue of claims being made under the bonds issued on behalf of Price; (4) Price is likely in possession of assets that could be used to satisfy the obligations of FIC; and (5) FIC offers to do equity and makes no effort to avoid its secondary liability to the claimants on the bonds it issued on behalf of Price. *See Doster*, 268 Ala. at 126.

Accordingly, Price shall be required to deposit cash or collateral in the amount of $200,000.00 with FIC to exonerate FIC against any future losses it may incur by virtue of having issued the aforementioned bonds on behalf of Price.

## IV. Conclusion.

In an order to be entered contemporaneously with this opinion, FIC's motion for summary judgment will be granted, and this action will be dismissed with prejudice as to all claims against Walter J. Price.

Done, this _____ of May, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

13